Your Honor, it is the pleasure of the Court of Appeals to hear argument on the issue of an objection that was filed in district court before Judge Whalen to a conviction that Mr. Torres-Garcia objected to as not being his. And apparently that conviction, when counted against your client, was enough to move him from Category 5 to Category 6, so it had a definite impact on his sentence. That's correct. And I think the issue is twofold at this point. Whether or not the burden lies on the appellant to demonstrate that that is not his conviction, in addition to having objected to and in addition to having testified at his sentencing hearing, at least given a statement, if not testified before from a witness chair. He testified when he told Judge Whalen that wasn't his conviction, along with other convictions. And I submit to Your Honor, to Your Honors, that the burden lies on the government to show with the preponderance of the evidence that, in fact, that's a reliable piece of information, sufficient indicia and reliability to demonstrate that the judge can consider it to increase his points, his criminal history points, and thereby increase his category to Category 6. Yes. Are you contending that the district court placed the burden on your client? No. I'm contending that the government is, in their brief, arguing that the burden lies on my client to show that it wasn't him. There's a point in the government's brief where they're ‑‑ I believe they're arguing that the burden lies on Newman. In the case of Newman, there's ‑‑ the government is saying that albeit the real Dermore, who is apparently what my client's identity, he assumed, suffered a 1991 conviction. In Madera County. In Madera for DUI. Apparently, that fact seems not to be important to the government, saying so what in the brief. And they ‑‑ I think the government did recognize it was its burden to prove the existence of prior offenses. Well, I mean, that's ‑‑ then I'll move on to something else. The burden is on the government. The question then is what sort of information the court had to rely on and not provide to the government. And I think the court had to rely on the fact that Mr. Torres-Garcia was adhering at least to demonstrate, for the government to demonstrate, that the conviction is sufficiently reliable to attribute it to his criminal history points. And I submit to the court that that conviction, even though Mr. Torres-Garcia did not have the burden on the facts before the court, has sufficient indicia of reliability. Let me see if I understand. The information came in a rap sheet, an official government rap sheet on your client. Is that right? Well, that's my concern as well. Judge Wayland said in response to my client's objection, I have enough because there is an FBI rap sheet, et cetera, and that's ‑‑ I can rely on it. What he was saying, I believe, was that the probation department relies on that information. But there was no testimony nor an assertion from the probation officer that the probation department relied on a rap sheet, and thereby allowing the defense counsel to question how the rap sheet was obtained, whether the rap sheet actually had a fingerprint analysis to attribute to Mr. Torres-Garcia, or was just a rap sheet about a person named Demuro in Madera, California. My concern is that apparently the real Demuro testified that in 1986 he met Mr. Torres-Garcia under the name of Plasencia, I believe. And Mr. ‑‑ even in the government's brief, it's indicated that Mr. Torres-Garcia suffered several arrests, and those arrests were in 1991, 1994, 1998. And there is no indication that Mr. Torres-Garcia, posing as Demuro, was back in Madera in 1992. Let me tell you one of the things that bothers me about the case is this. What he did after he got the pre-sentence report, he filed a two-page document of objections, and with respect to three convictions, including this conviction, he objects to the statement that this is his case. That's the language, the same language in all three, and this is his case. Now, in this strange case, we don't know what that means, because Torres-Garcia kept insisting during the trial that he wasn't Torres-Garcia at all, he was Demuro. And when he says that this conviction was not his case, all that that may mean is since he was not Torres-Garcia but was Demuro, this was not his case because it was Torres-Garcia's case and he's not Torres-Garcia. I find it very difficult to find out exactly what his claim is. Does he claim he was never convicted of these offenses? We don't know what it is. Your Honors, I think the government is also in a similar situation, because the government is, throughout the trial, proving that Mr. Torres-Garcia is not Demuro. At sentencing, the government is saying this conviction, 1992, is Mr. Torres-Garcia's. We have convicted us as not being Demuro. But now we want to have this conviction and increase his criminal history points. So I think that same dilemma applies to the government as it applies to the defendant. The defendant's position at that trial, albeit I was not his attorney at the time, was that he was indeed Mr. Demuro. And he stood convicted at sentencing. And now at sentencing, he's not being specific and saying, okay, Judge, I now am Mr. Torres-Garcia. He didn't say that. He's objecting to the conviction as not being his conviction. I don't think that he was specific enough to say it. I mean, I don't know whether he was lying or whether he suffered some delusions. He may apparently, for years, he had been using Mr. Demuro's birth certificate as a method of trying to get into the country. And, you know, maybe he has convinced himself that he was someone else. We don't know. That is perhaps true. I actually spoke to that issue before Judge Whalen, that he didn't have any motive in asserting that his identity was someone other than his real identity. But at time of the objection, however, the indicia seems to manifest a nanosphere of unreliability since the real Demuro suffered a conviction for a DUI, driving under the influence, 1991. 1992, there is a ticket which is commonly known as Penal Code Section 14, I believe it's 14601. 14601. Which is driving with a suspended license for having a conviction of driving under the influence. I submit to Your Honors that the remoteness in time that Mr. Demuro has been demonstrated to have been in Madeira, which was 86 when he met the real Demuro. I'm talking about Mr. Torres Garcia when he met the real Demuro and allegedly, apparently, was at least convicted of having assumed his identity or at least he was using his identity as a defense, a trial, that the remoteness of time is not sufficient to demonstrate that in 1992, Mr. Torres Garcia was actually in Madeira using the identity of the real Demuro. It's more likely that the real Demuro who lived in Madeira, who had suffered a conviction, would be the responsible party for that 4601.2. Exactly what do you want us to do? What do you want us, what are you asking us to do? What I'm asking is to remand the case for a hearing on reliability on that point. To determine whose conviction it is. Yes. Either the client's or the real Demuro's. And I submit it doesn't have to be beyond a reasonable doubt. I'm mindful of that. But if just assuming arguendo that the real Demuro submits an affidavit under penalty of perjury that he did not suffer that conviction himself, that may be sufficient to sway a judge that that is, in fact, my client's point. But none of that was done. It was just summarily taken from a rap sheet and said, well, since you've been using this identity, as Your Honor indicated, well, you know, you should be. You want the benefits, you get the burdens. And I don't think the law is. You want to be Demuro? Okay. And, Your Honor, I don't believe that's the law. I think the law is that we convicted you as Torres Garcia. You're claiming that this conviction is not yours. We're not going to impute this conviction merely because you were using that as a defense. That's another issue. That's an issue that may have to do with other adjustments or departures. Thank you, counsel. Let's hear from Mr. Cerno. Thank you, Your Honor. David Cerno, operating for the United States. I'll address counsel's argument in just a minute, but I do have to say that on the second argument that counsel raised in his brief, that is the hearsay, in preparing for this argument, I had the feeling that I missed the point in my reply brief, and that is that the testimony of the immigration inspectors when they were interrogating Mr. Torres Garcia and the information that they took out of the computer and they relied upon in making their decisions, I would submit that that evidence was admissible, first because they were merely testifying in a summary fashion about information that was in documents which are clearly admissible. And secondly, it was not really introduced for the truth of the matter asserted that it's hearsay, but it was simply indicating why these agents did what they did, that is to process and arrest Mr. Torres Garcia for various immigration violations. And finally, even if it's not admissible, it was harmless because Mr. Torres Garcia got up and testified and essentially admitted everything. And so the fact that these agents also made those statements during their testimony is quite irrelevant at that point, and also the INS records were admitted and contained all the same information. Now talking to counsel's argument, the way the burden, or the way that we believe the burden goes in this situation is that it's, it goes government, defendant, and then back to the government. The government has the initial burden of establishing a conviction. And the Newman case and other cases, I believe, established that a rap sheet, the fact of the conviction, establishing that there was a conviction starts the ball rolling and carries the government's burden. And I might say that I have an additional case that I'm going to submit to the Court. I faxed it to counsel yesterday. It's a Fifth Circuit case. It's called U.S. v. Ayala at 47 Fed 3rd, 688. And basically, that case was 47 Fed 3rd, 688. 88? 88. Right. At page 690. And basically that really summarizes our position here, and that is that it starts off in saying a pre-sentence report, generally a pre-sentence report bears sufficient reliability, permits the sentencing judge to rely upon it. The defendant then bears the burden of demonstrating the PSR is inaccurate. In the absence of rebuttal evidence, the sentencing court may properly rely on the PSR, and the court is free to disregard a defendant's unsworn statements or assertions of the PSR. Generally that's true, but this is a bizarre case because this is an identity theft case in one respect. Absolutely. And you admit that. I mean, this guy stole somebody's identity. So you've got a rap sheet now that relates a prior conviction, and you've got a witness who says, I was convicted in Madera County of a crime like that. So it raises the specter that whether the guy asked for it or not, you're imposing upon him in sentencing terms responsibility for what somebody else did. And if I parse through this information, it appears to me that a pretty solid case, maybe not a perfect case, a solid case can be made for the proposition that because of INS problems, Torres Garcia was in custody between March 392 and April 1693. And if that's the case, he couldn't possibly have been driving on August 92. And Del Murro says, well, could have been me. So if this thing is susceptible of a rational conclusion, I mean, even a conclusion that's driven, that couldn't have been him because he was in custody. I mean, wouldn't that suggest that in this case, although generally it might be okay to look at a rap sheet, here you've got to go behind it before you increase a sentence? I'm afraid, Your Honor, you've done a lot more work than anybody else in this case has done. That is, going through the record and basically making his argument for him, because neither Mr. Torres Garcia nor defense counsel made that argument and gave the district court and the United States the opportunity to work through it. Except he does say, he does say, using again the wrong name, I, Del Murro, say that that's not mine. Well, what you really have here. But if he's right, Del Murro says it's not his, then it is Torres Garcia. So we've got to impute to him, I, Torres Garcia, say that it's not mine. That's true. What you basically have here, if you work on the proposition that rap sheets are generated from fingerprints, that basically what you have here are two rap sheets. You have the real Del Murro's rap sheet and you have Torres Garcia's rap sheet. And if Torres Garcia's rap sheet also has AKA Del Murro's on them, I mean, that's just so, I mean, that's just because he uses the name. Counsel, were there actual rap sheets introduced? We don't know. We don't know what judge, if Judge Whalen had it or not. He simply says at the sentencing, he simply says, your rap sheet says that you're good for the job. Isn't that problematic for us, Dan, in terms of determining whether or not the district court properly resolved the conflict or the objection? Without knowing whether they had a rap sheet, I would suggest it probably is, yes. So we don't know whether the rap sheet at the top of it showed Torres Garcia's name or not, do we? Literally, no. But, again, I would suggest that if they are generated through fingerprint scans, that the chances are pretty good that it's his name at the top of the sheet with an AKA Del Murro. The chances are pretty good, but is that good enough to justify giving him another year in jail? Well, if the government's, it's just a preponderance of the evidence. We don't have to go much further than that to establish that he's good for it. But also, also, I think the cases are very clear that, as you pointed out, Judge Friedman, that the, that he's got to do more than just make a statement, a bald, flat-out, unsworn, it's not mine statement. He's got to come up with something more reliable than that. And he didn't do it. So the government, the government made it, carried its burden. He didn't carry his burden. Well, let me ask you something else, though. Once he denies the correctness of something in the pre-sentence report, doesn't that shift the burden then back to the government to support it? You say he has to put in some, something more as an affirmative case before the burden shifts back. He has to come up with something more than just a bald assertion. He has to prove a negative. He says it's not mine. And the problem with this case is you've got another guy's testimony that suggests strongly that he's right, that it belongs to the other guy. Is there any damage done by remand to take a look into this? I would suggest no. No. Okay. Do you have anything else, Mr. Curnow? I have time. Do you have anything else, counsel? Just briefly, Your Honor, that I don't even know if this was made by counsel. If a rap sheet is generated by a fingerprint analysis, we don't have that information before us. If this rap sheet was actually a name, birthdate, or other biological information or whether there was actually a fingerprint. And unless we know that, we cannot even answer the argument. That's true. And my information is outdated. But I was in law enforcement for 23 years, 17 years in the State, and I saw an awful lot of CII rap sheets and other rap sheets that said on them in stamp not verified by fingerprints. With that, Your Honor, I submit. Thank you. Case argued is submitted. Thank you, Mr. Curnow. Thank you. And we'll be in recess until tomorrow morning at 9 o'clock. Counsel, did you get this? Did I read that fast? Did I sound?  It was kind of blurry, but that's okay. Okay. Well, here. Grab one.
judges: Friedman, Trott, Rawlinson